Before we call the first case I would advise the attorneys that each side will have approximately 15 minutes for your presentation and from that the appellant may save out some time for rebuttal. If both attorneys would step up or whoever is going to argue please and identify yourselves for the record. First when I saw that red brief I thought there was a cross appeal but then I realized upon further review it's a surreply. We had a few briefs to read, we have read them, multiple issues so with that if you want to proceed Mr. Hunt please step up and begin. May it please the court, my name is Keith Hunt and together with my co-counsel Merle Royce, George Grumley and Saul Wexler we have the privilege of representing the plaintiff's class. This case really boils down to a couple very, very simple issues that all start with a municipal finance problem and the fact that the city has municipal finance issues does not give license to torture statutory interpretation or creative taxation. In 2001 the bearers wrote a memo to the city of Chicago and they argued that the amusement tax ordinance cannot apply to the sale or transfer of PSL licenses for several reasons. Unfortunately the city then used that as an opportunity to in essence threaten both financing, strong arm the bearers and in effect attempt to have the bearers waive rights on behalf of prospective PSL purchasers and licensees. According to the exclusive agency agreement that was entered between the Chicago Park District and the Chicago Bears, the bearers were to withhold and pay taxes including amusement taxes if levied. PSLs were then sold to people across the country and the documents that were approved by the city and were issued as part of the PSL license agreements and the rules and regulations governing PSLs simply reflected that in the event that a tax were levied it would be taken from monies already paid and there would not be a separate obligation for payment. And that did occur, did it not? The bears paid a portion of the... The bears, yes. The bears paid, the city took the money and no one was ever told that that occurred. Don't the agreements indicate that if an amusement tax were paid that it would be paid by the bears and not the purchasers of PSLs? Isn't there something in that language or wasn't that at least some kind of admonition? Well, it indicates that there was the possibility that certain taxes might be levied but certainly there was no actual notice to any of the purchasers at the time they purchased the PSL or subsequent thereto until May of 2009 that an amusement tax was ever levied. What does the notice have to do with, is that really on a different issue or what are you using that for right now? Well, I think it deals with several issues. First of all, it obviously deals with the issue of the refund class. It deals with the issues of whether there is an equitable tolling of any statute of limitations argument that the city has advanced. It also deals with, in essence, this entire scheme that the city hatched in an effort to assess amusement taxes in contradiction to the plain language of the statute. We start with the fact that municipalities are creatures of the legislature and they're only authorized to do that which the legislature or the Illinois Constitution grants them the power to do. And in this case, the city lacks any home rule authority to impose any of the taxes that it seeks to assess here. There was a preemption statute passed by the Illinois legislature and it specifically provides that the city may not impose a tax on tangible personal property. Now, that really launches us, I think, into the cases because in Mr. B's, the city specifically took the position that tickets were tangible property. Now, in that case, they were trying to avoid a different argument. But as the Seventh Circuit noted in the StubHub decision before it was remanded to the Illinois Supreme Court for an advisory opinion on the issue, the city, in essence, dug itself a hole by taking that position and it now wants to take a contrary position in these other amusement tax cases. It can't do that. It really sort of calls to mind the famous quote from Justice Mills in the Fourth District in Department of Transportation versus Co. where Justice Mills started out his opinion by saying, the truth is not a weather vane. It does not veer when the winds of self-interest change. That is precisely what the city is trying to do here. They're trying to take a statutory scheme, an amusement tax ordinance, which by its very words say that the tax may be assessed on the amount paid for the privilege to enter, witness, view, or participate in the amusement. Are you missing a few words that precede those words or no? I don't think we are at all. It's all of the charges that go for the privilege to enter. It doesn't talk about a specific seat. It talks about the privilege to enter. The Chicago Bears Memorandum is clear. The PSL License Agreement is clear. The PSL itself grants no privilege to enter or view the amusement. In fact, it specifically says the contrary. Well, does it grant any privilege at all? It grants the ability to... Does it matter whether we call it a privilege? Does it give the privilege to purchase particular seats every year? It grants the right to a specific seat location, which a standard season ticket does not grant. It also grants the right to transfer, sell, or bequeath the ticket rights or the ability to purchase at a location in the future to a third party. Would you say those things make it personal property? They do make it personal property. The contract itself is obviously tangible. And for that reason, it triggers the preemption statute following the Mr. B's opinion, and therefore says that the city does not have home rule authority to assess the amusement tax in any way it sees fit. And if the city lacks home rule authority, then the city's authority is necessarily constrained by the amusement tax statute that was passed by the Illinois legislature. And that statute specifically says that they can impose a tax on the seller of tickets. Well, PSL purchasers and transferees are neither sellers nor are PSLs tickets. They are exactly the opposite of a ticket. And we pointed out in our briefs, I think fairly clearly, that there are substantial differences between the PSL and the ticket itself. Season ticket holders don't have the right to guarantee a specific location within the stadium. The PSL doesn't grant the right to enter, and the season ticket doesn't grant any of the PSLs. In fact, they're completely separate and distinct transactions. The PSLs were sold initially. But you can't have one without the other. You can't utilize the PSL unless you buy a season's ticket, and you can't buy those particular season's tickets unless you buy the PSL. I mean, they're interrelated. They are admittedly related, but the... Well, not just related. You can't have one without the other. Well, but you can buy season tickets. Not for these particular seats. Not for that particular seat, but only half the seats in the stadium. And those are designated seats. They were set aside, and they said these seats are going to be PSL seats, right? That's correct. So if you want to be in this position where you have a right to pick your seat and have all these rights, you have to buy both. Well, it's interesting because the PSL agreement itself does not obligate the person contractually to buy the season tickets. And what the BEARS memo points out, and this PSL agreement point out, is that if a PSL owner fails to buy the season ticket on a given occasion, the BEARS have the right, but not the obligation, to then sell that season ticket to another party. But there's nothing in the contract that specifically obligates the PSL purchaser to purchase those season tickets. That term simply doesn't exist. No, but if they don't purchase, then they lose it, don't they? They may, but that's at the BEARS' option. It is not at the option of anyone else. And so there's nothing in this record that suggests that it's automatic that they necessarily will lose it. And that's one of the points that the BEARS and the Department of Weight memo back in 2001 pointed out. How were these PSLs marketed in terms of the price? Was a set price for the PSL, and then the BEARS said, and if there's a tax, we'll pay it? It was initially marketed that there was a fixed price for the PSL, correct? And there was some noted language in the agreements, not in the marketing literature, but specifically within the agreements themselves, that in the event a tax were to be levied, the BEARS would pay it and the owner of the PSL, the purchaser of the PSL, would not then be called upon to write a separate check. But that raises a question in my mind. I know it's not been briefed, but how has the plaintiff class been damaged then? I mean, if you have to pay a set price, and that's going to be the price whether there's a tax or not, and the BEARS are willing to take it upon themselves the risk of whether or not there's going to be a tax, and it's going to cost you whatever, $10,000, it's $10,000. So where's your damages? Why are you entitled to a refund? The BEARS said you're going to pay $10,000 whether it's taxed or not. That was wrapped into the price that was charged. And so, therefore, since that tax was paid by, in essence, paid by the purchaser of the PSL, albeit unknowingly and without any notice or any subsequent notification, it was transmitted by the BEARS, but it was specifically indicated in both the Exclusive Agency Agreement and in the PSL Agreement that the BEARS would be using funds remitted by the PSL purchasers. They were simply the conduit in that situation. In essence, they were out debating this issue with the city of Chicago at that time. One of the other things that I think is important to note here is that when the city wants to talk about specific seats, which, by the way, that language is nowhere in the ordinance. Nowhere in the ordinance on amusement taxes does it say part of the proceeds or we're going to tax you on the proceeds for the sale for a specific seat. That's something that the city wants to inject through its briefs and through its arguments. But under basic rules of statutory interpretation, you can't ignore words, you can't add words, you can't subtract words. And that's precisely what the city is attempting to do here. But it's interesting to note that elsewhere in the amusement tax ordinance, when they talk about skyboxes and suites and things like that, they specifically say that the city is not entitled to tax more than 60% of the cost of any of those, quote, special seating areas. By the way, I neglected to do it at the outset, but I would like to reserve at least a couple minutes for tomorrow. Sure. What's the standard of review? I don't, on these issues, I don't see it. It's all, I believe we included in our brief, it's all a de novo review. This all deals with questions of law and statutory interpretation. Well, the authority for this tax is, the statute is 42-5, which says the city can tax amusement. And the ordinance itself says that an amusement tax is imposed upon the patrons. Doesn't that give authority to, for the city to impose such a tax? And it's only the rate that is governed by this price of admissions. They're basically saying that this is the rate we're going to charge this tax. Well, there are really two statutes that provide that authority. 42-1 specifically talks about, and that's what I referenced earlier, The child would back off of that, though, right? I'm sorry? The child would kind of back off of that because it has to do with the sellers, but then 42-5 says generally you have a right to tax amusements. They have the right to tax amusements, but the PSL isn't the amusement. The Bears game is the amusement, and the only thing that the statute authorizes in municipality tax is the entry into the amusement. And so I think we need to look at both of those statutes sort of hand-in-hand from that standpoint. The Chicago Health Clubs case, I think, also provides strong guidance for this court in assessing this situation, because in the Chicago Health Clubs, the city was faced with a similar problem in which it wanted to tax the initiation fees, membership fees, and other non-amusement aspects of the use of a health or racquetball club. And in that case, the Supreme Court specifically constrained the analysis to looking at the specific terms of the ordinance, the caution that we can't expand or contract the scope of the language, and that the city can't come up with post hoc justifications for how it wants to interpret that language. In that case, the city issued a revenue ruling that said, well, we're not going to do it as broadly as the words of this ordinance pronounce. We're going to use a more narrow interpretation. And the court rejected that out of hand. It says the ordinance is the ordinance, and it either rises or falls on its own. In this case, we submit that the wording of the ordinance must rise and fall on its own as to whether or not a PSL meets the definition of a ticket, whether a PSL purchaser meets the definition of a ticket. Why can't we interpret the ordinance to allow for this tax because of the language, the general language, that the city's ordinance provides for an amusement tax? The admission fees or other charges paid for the privilege to enter to witness. Now, why can't we interpret this taxing statute to mean specifically other charges paid for the privilege? Because it's kind of a big, broad term, and in this case, purchasing the PSLs gives those individuals the privilege to have certain seats to eventually, or to view rather, to enter. I mean, why can't we interpret it that way? This language is not very precise. It's actually, you know, rather broad, and that's one of the arguments the city is making. I think you need to look at both halves of that sentence and read them together. Right, yeah. And it's true that it talks about – You could read it certainly that way. I respectfully disagree. All right. We believe that when you read the entire sentence together, you look at the total amount paid for the privilege to enter or view the amusement. And given the fact that the PSL agreement – Well, now you've changed the words. You said the total amount paid. When the language is the admission fees or other charges. You just inserted language. I mean, I think you've argued they're inserting language, too. I'm attempting to shorten and summarize a longer sentence. All right, go ahead. Okay. Yes. Or other fees to view, enter, et cetera. And the point is that the PSL agreement specifically says that it doesn't confer the right to enter. Yes. The PSL agreement was reviewed and approved by the city. The exclusive agency agreement was reviewed and approved by the city. All of that goes to show that they knew going in that there was – that the purpose of the PSL was not to provide the entry, but it was for these other things. It was the transferability. It was the ability to sell those things because as a normal season ticket holder, quote, unquote, someone who does not own a PSL, they have no right to sell their season ticket to another person from year to year. They have no guarantee they're going to be in the same location. In fact, they don't even have a guarantee that their seats are going to be renewed from year to year. All of that is subject to the sole discretion and license by the bears. The PSL grants somebody a tangible property right that they don't otherwise have. The trial court kind of grappled on to that initiation fee issue. They said, well, the city contemplates initiation fee, and it basically simply excluded health clubs and those type clubs, and therefore it implies that other initiation fees such as the right to buy these permanent seat licenses are taxable. How would you respond to that argument? Respectfully, I would suggest it was a ruling that was designed to reach a conclusion rather than a path of logic that was necessarily followed. When there's language in one statute that suggests something and then it's not included in other language, taxing language, that's certainly an argument of statutory construction that they've made. So, I mean, I don't know. I guess you're saying that it's a result-oriented decision, but actually they're using basic principles of statutory construction to show why, if it's done in one statute and the language is not in another, that that means that it's not included. I acknowledge that that is a fundamental premise of statutory construction, but the other tenets of statutory construction were not applied and were not followed by the trial court in this case. And that's the problem because the trial court really grasped for, in the first summary judgment decision, a way to look at this, and then we came out with a ruling that the refund class, there's proper taxation there, but subsequent transferees are not properly taxed. And so now you end up with this whole equal protection issue about how you have two people who hold the same thing. Some people are subject to a tax and other people aren't. Well, eventually he reversed himself on that. He granted the tax on both the original and then any subsequent resales, correct? That's correct. All right. Let's talk about the statute of limitations. As far as going back to the original amounts, there's a provision that requires that the refund petition be filed within a year. But the URPO in the one-year statute cannot apply properly where there is no notice, there is no ability for somebody to even investigate or know what's going on in that situation. And what case are you relying on for that? Well, I rely on several. And I think if you look at all the cases in this area, they really boil down to either sides of the same dichotomy. But specifically we rely on ghetto and the fact that there were insufficient facts in that situation. And I would compare that with the city of Gurney case, the village of Gurney case with the great America and the fact that in that case the amount of the tax was specifically printed on the face of the ticket. And aren't the bears, aren't they the ones that would be seeking this if it were even available because they're the ones that paid the tax? They simply remitted the tax on behalf of the PSL purchasers. Because according to the city, according to the way the tax statute is done, the tax is imposed on the purchaser or on the patron, not on the seller. So your argument is really more of an equitable tolling argument, isn't it? It is in many ways both a discovery rule or an equitable tolling argument. Well, according to the city, even under that you've lost your time. That simply cannot be the case. The first notice that anyone was given that a tax was actually assessed or that the city was now attempting to assess it on subsequent transferees was in May 2009. Within a couple of days of when this case was filed, challenging that practice. That was the first time anyone was told that this transaction is subject to a tax. What about the original PSLs that suggest that there may be an amusement tax? I don't know. That's in the documents, isn't it? It may, if, in the event of. Those languages don't, according to the decisions of this court and of the other courts that have looked at that, don't rise to the level of giving somebody notice. I would suggest that if we look at sort of the other side of the other lines of cases where this court and others have held that someone possessed sufficient knowledge, I'd call the court's attention to the Sundance case and to the opinion that you wrote, Justice McBride, in Alvarez, where in those situations you're looking at specific. Somebody wrote a check. They knew they wrote a check, be it a duplicate check, a check for road impact fees, a check for some other payment of taxes. In all of those cases, the common thread running through all of those cases is simply that somebody wrote a check and they knew at that time that a tax was being imposed on them. And in those situations, we have people who waited, sat back on their rights, waited for another court, another plaintiff, another decision to be made. There's no facts in this record to suggest that any of the members of the plaintiff class did anything like that. They were never told that it was actually being taxed. They entered into a transaction to buy a PSL from the Chicago Park District, not the Chicago Bears. They were entering in a contract with a different entity. And then the city goes and secretly collects this tax from the Bears without anybody ever getting any notice. Had these people been given some sort of a notice, a receipt mailed to them, a letter, anything, indicating that they actually had paid the tax or a tax was being remitted on their behalf, then we might agree that in those situations somebody was possessed of sufficient facts to be able to formulate an argument or to go ahead and challenge or create a tax protest. How are the original purchasers harmed by this tax? They paid a certain amount. I don't know if it's fixed or not. They paid a certain amount for this PSL. And the language says a tax, if any, is already included in this price. So they're going to pay this price whether a tax was assessed or not. I think the economic realities are that the Bears were having this discussion back in 2001 before PSLs were offered for sale. They were continuing to have this discussion with the city in 2002 and then into 2003 because the record reveals that the tax was not actually paid until sometime in late 2003 or 2004. So there was a continuing dialogue that was taking place. And so as prudent business people, which I think we probably all know that the McCaskies are, they went ahead and included that in whatever the price that was calculated in order to generate this money. But it's important to remember that the money that was being paid for the PSLs was not going to the Bears. It was going to the Chicago Park District to finance the renovation of Soldier Field. But wouldn't they try to charge as much as they could for those PSLs? I mean, they're saying we know a tax might be coming, but we're going to try to charge as much as we can feasibly get for these things and get them sold quickly. And so a purchaser says, I'm going to pay this price. And to him, it doesn't make any difference whether the Bears pay a tax or not. He's paying a fixed price. Well, in an open market, that might be how the Bears would set a price. But I would respectfully suggest that in this situation, they were trying to reach a financing calculation. And if you look closely at the memo that Schiff Hardin sent to the Bears in 2001, they specifically talked about the amount they needed to finance in order to do the Soldier Field renovation, the amount that this tax would generate for them or that the PSL revenue would generate to contribute to that, and that lacking those PSL contributions into the construction formula, it was going to give them a shortfall in terms of the amount of money they need, and they were going to have to go back to the drawing board, redraw the plans for Soldier Field. How are these resales in any way a contribution to the improvement of the stadium? There is a difference between the resales. There is an inherent difference, and there are actually several. What are those people paying for when they buy that from someone else? Aren't they paying for the privilege of getting certain seats every year in a certain section? They are. They're also reimbursing the original PSL owner for the amount that he or she paid to the contribution to the Soldier Field renovation. Yes, but they're not paying for that. They're not contributing to the renovation at that point. But they're paying in a private transaction where Person A is then paying Person B for buying the PSL rent, and that transaction takes place over here. And that PSL rent puts them in there to view. They still have to go to the bearers to buy the ticket. That individual who sells the PSL does not sell tickets. They don't fall within the strict language of the statute that authorizes the imposition of an amusement tax. Well, depending on how you interpret it. Obviously, that's the whole rub here. Gives them the right to get that particular ticket, though, doesn't it? If they buy that PSL, they then have the right to go to the bearers and say, okay, I want that ticket, right? Otherwise, there's no reason to buy the PSL. Otherwise, they're at the end of a long line of people waiting for someone to leave. And the bearers can't say no, can they? I'm sorry? The bearers can't say no, right? Someone says, I want these tickets in this particular spot with the PSL. If they have the PSL license, then they have the right to buy it. Why wouldn't we just consider these particular tickets in a separate class as opposed to just general season tickets? So, for example, if a bearers fan says, I want section 140, row G, seat 2. That's the seat I want. And the bearers say, if you want that ticket, you have to buy the tickets and you have to buy the PSL. And so when the fan says, okay, and he puts down the 10 grand, and I'm just throwing a number out, the 10 grand for the PSL, and he puts down the $100 a game for the tickets, why hasn't he paid $10,100 for the right to view that amusement? Well, because the $10,000 is paid for the right to be able to keep, sell, reserve those specific seats going forward for the right to give them to your kids, your grandkids, and so forth, the right to sell them at large. And none of those transactions... But they are worthless. They are totally worthless if they're not used for the purpose of getting in to see a bearers game. I disagree. Respectfully. The reason is this. Because if you don't buy those tickets every year, it does say that the bearers may consider it a default. But the bearers specifically identified that this, although it was not their purpose to create investment opportunities... It did. It did, and it is. And someone can buy a PSL, can purchase those seats, and sell them and never enter. Sell off the seats, stub up, what have you, any of those other resale vehicles, and do that. The fact of the matter is the PSL gives you different rights than what the ticket does. Well, that just means that you had the privilege, but you didn't exercise it. I mean, that cuts both ways, too. You're buying the privilege. You're not buying the viewing. You're buying the privilege to view it. And so the fact that you take your tickets and give them the stub up, I don't think that that's relevant. But that kind of cuts both ways because then it could be argued that it is definitely being used for the purpose of someone being able to enter and view that amusement. I think that cuts both ways. But I think we need to go back to the original wording of the ordinance itself. Would you say that is, of all of your arguments, the strongest one, that the language of the statute itself does not envision, or the interpretation cannot be made the way the city is arguing it? Yes, I would agree. Statutory interpretation is our strongest point. Of the actual ordinance, as opposed to whether it's an occupation tax or whether it's personal property that home rule would not permit. Your strongest is the actual language. The actual language of the ordinance. The city could have put in there for a particular seat. They knew how to do that when they wanted to talk about it in a different section of the ordinance. They didn't do it here. Is there anything you want to cover at this point that you haven't? Just to point out that in terms of the, I don't know if the court is concerned at all about the amendment issue, but obviously amendments to pleadings are supposed to be freely given, liberally granted, and so forth. At the time we filed the motion for leave to amend, there was no final determination. And I would point out that the city's position on this issue is also been inconsistent and contradictory. Because when we filed the first notice of appeal, the city took the position that because their counterclaim was still pending, that somehow the notice of appeal was not yet right, there hadn't been a final decision. And yet, in the briefs that are now before the court, they take the position that, oh, but when Judge White ruled on the motion to reconsider, it in essence disposed of all the issues that were pending, including the city's counterclaim. And therefore, there was a final judgment. And therefore, the appeal provisions of the Civil Practice Act don't apply, and we had no right to file an amendment, or I'm sorry, the amendment provisions of the Civil Practice Act do not apply. Is there some evidence in the record that shows that the Bears took into account in pricing the PSLs that they might have to pay this tax? I think the evidence that's in the record really comes in the form of the chronology. We have 2001 memos back and forth to the city where the Bears are arguing that the transaction should not be taxable, and they never price or offer for sale any of the transactions or any of the PSLs until 2002 and 2003. So at the time those actually hit the public block, the Bears clearly knew that they were in a debate with the city as to whether or not the city was going to attempt to impose the tax. And so your position would be that it certainly wouldn't be prudent on their part to not take into account their pricing effect that they might get hit with this tax. Correct. So therein lies the plaintiff's class's damages. Correct. But in conjunction with the fact that the ordinance specifically says that this is a tax on the patron. Correct. Okay. Thank you. Very good. May it please the Court. The city's amusement tax helps pay for the substantial services that the city provides for the venues in Chicago at which sporting events and other amusements are held including police and fire protection, emergency response, and building inspections. This morning I'll explain first that the city's taxation of the charges paid for PSLs for Chicago Bears games is lawful under both the city's amusement tax ordinance and state law. I'll then explain that regardless plaintiff's claims for refunds of the tax that the Bears paid in 2002 and 2003 when they first sold PSLs are time barred. The city will rest on its grief for its remaining positions that plaintiffs can no longer pursue a takings claim and do not have leave to pursue due process or equal protection claims unless, of course, the court has questions concerning them. The city taxed the payments for all PSLs when the Bears sold them originally in 2002 and 2003 and the Bears collected that tax and remitted it to the city. And the city also taxes the payments made for PSLs when their owners resell them. The city's taxation of the payments for both the original PSL purchases and the purchases of resold PSLs is lawful under the city's amusement tax ordinance as well as state law. The ordinance specifies that it taxes all charges paid for the privilege to enter to witness and to view or to participate in amusements within the city. Of course, the most common charge paid for the privilege to attend an amusement event is the face amount of a ticket to the event. But the face amount of the ticket is not the only charge that the ordinance taxes. By its plain language, the ordinance also taxes all other charges paid for the privilege to attend an event. You'd agree, wouldn't you, that the purchase of the PSL doesn't give the fan the privilege of entering the stadium? That's correct. The purchase of the PSL, a PSL in hand does not allow a person to get into the event. The purchase for the PSL is a charge paid for the privilege because you have to have a PSL to purchase a ticket. So any amount that you pay for a PSL is fairly considered amount paid for the ticket itself. It's in addition to the face amount of the ticket. As was brought up in the last presentation, what if I was just an investor and I thought that the Bears were going to do great and PSLs were going to go up. And let's say that I bought the PSL but I never bought the tickets. And I allowed the Bears to go ahead and sell those away. I've got this PSL and I'm going to hold it for a couple of years and then I'm going to sell it to somebody because I think it's going to be worth more than what I bought it for. Have I ever gotten the privilege to enter the stadium? Well, under your scenario, no, you haven't. And I would agree then that the city couldn't tax that. I think that's right. I agree with Your Honor. But in any situation in which a person So then there's a class of people out there that would be entitled to exemption from the tax? As far as we know, there are absolutely no purchasers who purchase PSLs and then have not in turn purchased the season tickets for those PSLs. We are not aware of that. So I'm the only guy who came up with that idea. Excuse me? I'm the only guy who would think of something like that. Maybe people have, but as far as we know, as a practical matter Well, I must have misunderstood his scenario. Well, my So your answer is no one's done that? No one's bought the PSL without buying the tickets? That's right. Okay. The purchase of a PSL Unless you haven't taxed anybody for that. Excuse me? And therefore, you haven't taxed anybody for that. That's right. Okay. That's right. No one has claimed that they actually purchased a PSL and then never purchased the They're not seeking refunds for the original collection by the bears of the tax on the PSLs and claiming that, look, I purchased the PSL. I never purchased any season tickets thereafter. Please give me my money back. We've not heard that. And if we have heard that, then we agree. Well, under this agreement, the bears could recover that PSL, couldn't they? I mean, couldn't they declare a default? If you don't buy the tickets, the bears have the right to consider that a default and then you lose the license. That's correct. It would have been a big risk for anybody to do what the hypothetical Your Honor posed, which is purchase the PSL, not purchase the season tickets that the PSL gives you the right to purchase because it's a default. But you agree that if that's something that possibly could happen, then does that lead to the conclusion that the PSL is something separate and apart from the ticket and that the PSL does not give you the privilege to view the event and therefore it doesn't fall under the order? The PSL in combination with the purchase of a ticket does give you the right to, the privilege to view the amusement. Yes, but what about the scenario where someone did truly do this strictly for the investment, they got the PSL, they make the request for the tickets, but they never used the tickets. They're holding on to that investment. What about that situation? Right. Where have they, I mean, where is the privilege to enter to witness or view or participate if they've never done that? I agree with Your Honor that they haven't, but that situation has not occurred. We're not aware of it. So are you saying now that if someone bought a PSL and then routinely buys the tickets every year because they want to hold on to this thing for an investment, but they never enter the stadium that they are now exempt? No, because the word privilege to attend makes a difference. Well, there's no attend in there. Privilege to enter, to witness, to view. Right. So you're saying now that this is not actually going there, but just the privilege to be able to or something. Once a person actually has tickets in hand, there's no question but that they have the privilege to attend, even if they don't attend. All right. Okay. Fine. And the ordinance does not tax the actual attendance. It taxes the privilege. So anybody, when tickets are resold from one person to another, even tickets are resold from one person to another, then, of course, we have the privilege under the ordinance to tax each of those persons because at each juncture each new person obtains that privilege. Aren't we supposed to strictly construe the language of this statute? Isn't that a general principle we're bound to follow? That's correct. So how do we get to your position where, on the one hand, we're supposed to strictly construe this, and you agree that the PSL itself, this license, is not a payment for the privilege to enter or to witness or to view, and yet you're joining the words, the admission fees or other charges. And here, just let me put more into this, and that is that if you look at the language, the admission fees, generally we're talking about the price you pay to get in, right? Admission fees? Admission fees, correct. Okay. So the ticket or the fee, the price of this ticket, the fee that you pay to get in the door is what this statute is designed to tax, true? No, it taxes both the admission fees and other charges. I know. I'm getting to that. But the point of the ordinance is to charge a tax, an amusement tax, on the fee to get in the door, true? That's part of it. Certainly you have to agree. That's part of it. Or other charges. Doesn't that suggest that that is a charge for a fee, a price, an amount you have to pay to get in the door? Yes, it does. All right. And you've agreed that this PSL is not a, it does not amount to a license to enter, to witness, or to view. It is a, it's a contract that allows you to buy from the bears certain season tickets and in a certain section or seat every year. No, I didn't go that far. All right. The ordinance says charges paid for the privilege. Yes, yes. And so admission fees paid for. Right. I'm not skipping out on the word paid. It's admission fees paid for other charges paid. That's correct.  Well, you wouldn't have the words other charges if it had to be an admission fee. Otherwise it would be redundant. No, because the word or is in there. Okay. That's right. And there's certain ways to interpret that too. That's correct. Okay. So it could be the interpretation which I have just given. Well, the, my point is that you're correct that a PSL by itself would not obtain the privilege to attend an amusement. But a PSL in combination with the purchase of the tickets that the PSL gives you the right to purchase is a charge. Remember, it says charges paid. Yes. You pay for the PSL. You pay for the tickets that the bears then offer you when you have a PSL. So the amount that you pay for that PSL is a prerequisite to purchase the tickets. You can't purchase the tickets without them. So the combination of those two payments are they're both charges paid for the privilege to attend. Independently, the PSL isn't. And again, aren't these a separate class of tickets? These were a class of tickets that were set aside to be linked with PSLs. And the patron cannot say to the bears, I want this particular seat unless the patron pays this other charge, which is a PSL. And if the patron says, I want that seat, whatever section number I said before, and the bears say, okay, you can have this seat. And when you go to the game, you have the privilege to sit in that particular seat only if you pay the other charge, which is the PSL. Is that it? That's correct. That's absolutely correct. And this is no different than any other type of, let's say, straight ticket transaction. If you go to a Cubs game, Bears game, or any concert, you pay. There are different tickets, prices that are available. You can sit in different sections by paying different amounts for tickets. Some seats are better than others. You pay different amounts. The amusement tax taxes the full amount that you pay, regardless of where you sit. It is always ticket seat-specific. It's always, the ordinance is always seat-specific when there are different prices for admission to the event. Now, there are some events that may not have different prices for admission. But when there is, in almost every event there are different prices for admission, the ordinance taxes the full amount, and no one has ever claimed that you can't tax, you have to always tax the least expensive ticket. You can only tax the amount that a least expensive ticket would allow you to tax. No one has ever claimed you can't tax the most expensive ticket at the 9% rate. You simply can. And that's the same principle that applies here. It's true that these PSL tickets, the seats that are subject to PSLs, are different seats than other tickets in the stadium. So the answer to the argument, possibly I'm getting from you, is that argument that they make where they say, well, it doesn't say particular seat in the ordinance. The answer is, well, wait a minute, are you saying then we can only tax bleacher seats at the rate of a bleacher seat as opposed to the difference between a bleacher seat and a box seat? That's exactly what I'm saying, and I'm saying that any such argument is clearly incorrect. We plainly can't tax them. And you can view from both. So the patron has the privilege to view from the bleachers and the privilege to view from the box seat, but there's a difference between the two. And as a result of that, there's an additional charge. That's correct. The additional charge is taxed. And the additional charge is taxed. Isn't your position inconsistent with the Mr. B's case? No, it's not inconsistent with the Mr. B's case. Mr. B's concerned ticket resales, the court held that ticket resales are sales of tangible personal property. We don't have ticket resales in this case. We have permanent seat licenses, and the term itself, licenses, under clearly established law, licenses are intangible personal property. They may be embodied in a written contract. I mean, obviously, any license is. You've always got a piece of paper. But the gist of the transaction is not the piece of paper. The gist of the transaction is the license, and a license under clearly established law is intangible property. And so it's not subject to the 811, excuse me, yeah, 811-6A of the Illinois Municipal Code, which preempts taxes on sales of tangible personal property. PSLs are not tangible personal property regardless of, and so Mr. B's does not apply. Go ahead. Which statute allows you to impose this tax on the patrons, the patrons? The 11-42-5 of the Illinois Municipal Code. There's a lot of language in that statute, key language in that statute. Yeah, they're going to argue that you're allowed to tax places, but not necessarily people. It provides that the corporate authorities of each municipality may tax, and then it has a lot of language, may tax theatricals and other exhibitions, shows, and amusements. It doesn't say that it can only tax the sellers. It says that it taxes those events. Now, obviously, you never tax events. You're either taxing the patrons for the event or you're taxing the sellers for the event. Because that statute does not specify whether you're taxing patrons or sellers, it plainly taxes both. It taxes any, it applies to, it authorizes a tax either on patrons or on sellers. Well, they're going to argue, well, here's this language that says regulate all places. Now, a PSL is not an owned place. I mean, they're patrons. They don't own it. How can you tax them? Well, that's a different clause of 11-42-5. One of the clauses of 11-42-5 says it taxes places of amusement. But another clause of 11-42-5 says that it taxes the theatricals and other exhibitions, shows, and amusements themselves. It's a very generally worded statute that has many complex clauses. And if one consults the case law interpreting this section, there are many cases interpreting this section. For example, and we cite them in our brief, the page 37 of our brief cites many of these cases, including a state of Cary, Fox Valley Trotting Club, Stiska, Iberian. There are other cases as well. One would find that the courts have interpreted that section as authorizing taxes on patrons through amusements. It's also authorized taxes under that section on sellers of amusement. The language of that statute is broad enough to include a tax on either sellers or purchases. Now, remember, that's one of our alternative arguments in this case. We wouldn't need that statute in this case, in any event. We don't need it because the tax is authorized independently by the home rule provision of the Constitution. There are two alternative sources of authority that we have. Either one is independently sufficient. One is the home rule provision. The other one is this statute, 11-42-5. Under the home rule provision, we are able to, the home rule provision authorizes home rule municipalities to tax various endeavors within their government and affairs, including it confers the power to tax. And there are, in this case, through the history of this case, plaintiffs have argued that we don't have the home rule authority for either of two different reasons. One of those reasons is they say that it's an occupation tax. A provision of the home rule, one of the sections of the home rule provision says that you can't have an occupation tax without the authority of the General Assembly. We pointed out in our reply brief, they didn't make that argument in the circuit court. We point this out in our reply brief. They don't rekindle the argument. We point this out in our response brief. They don't rekindle it in their reply brief. They've waived that argument. That's not a viable argument anymore. They've given up on that one. The only other argument is the argument that Your Honor, Justice McBride mentioned, which is the argument concerning tangible personal property in this case. They have argued that it is tangible personal property and have addressed that. It isn't, as we point out, it isn't tangible personal property. What about the statute of limitations? The statute of limitations argument would only come into play, of course, if the tax were unlawful. If the tax is lawful, then it doesn't make any difference. Yes, obviously. The one-year statute of limitations is set forth in Section 4-156030B of the amusement tax ordinance. It's a one-year statute. The bears collected the tax in 2002 and 2003. That means that any claims for refunds had to be made one year after that, so in 2003 or 2004, but no claims were ever made until this action was filed in 2009. Well, you didn't advise any of the PSL license holders until 2009 that they were going to be responsible for taxes for prior years or for the sales, rather, correct? Well, that's not correct. The plaintiffs rely on the discovery rule, but they misstate the discovery rule. Under the discovery rule, the cause of action accrues when a person knows or should know through reasonable investigation of the injury and its wrongful causation. The sales brochures that were given to every prospective purchaser of PSLs in 2002 and 2003, the sales brochure had a statement saying that the prices include applicable amusement taxes. Nothing could be clearer. Nothing could have put anyone to their duty of investigation any more than that. If anybody thought they shouldn't have to pay amusement tax, they knew then that the prices would include them. Beyond that, I mean, in addition to that, the PSLs themselves have the language that Your Honor mentioned at the topside argument, which is they mentioned that amusement taxes might be a levy on it. It wouldn't have to say they will be levied. The discovery rule doesn't require that kind of notice. The discovery rule only requires that a person be put to investigation, that they have some reason to believe that they might owe the tax in the situation. So plaintiffs have overstated what the discovery rule is. Don't you also take the position in your brief that the discovery rule doesn't apply here? We do point out that the discovery rule doesn't apply here. That's an independent argument, and that is based on the notion that when there's a statutory cause of action in a case, the principles of tolling, including the discovery rule, don't apply unless that statute specifically says that those principles of tolling apply. And, of course, the statute of limitations here, the one-year statute in the amusement tax ordinance, 4-156030. And was there one such tolling statute in that Alferez case? Do you recall? I don't think there was, but my memory may be incorrect. The Alferez case is pretty powerful because, in that case, the court held it. Oh, you're not trying to compliment me, are you? No, I'm not. Although, if the shoe fits, that case actually held the following. That a taxpayer does not learn until after the limitations period has run that a tax was paid in error and that he or she has a ground upon which to claim a refund does not operate to lift the statutory claim. Nothing could be clearer. So their discovery rule argument fails from two different perspectives. If there are no further questions, we ask this court to affirm the judgment of the circuit court and to direct the circuit court to resolve the request in the city's counterclaim for monetary relief. All right. Thank you. Mr. Hunt? I guess to begin with the last point first, the city just made a request that the court admonish the trial court to resolve the issues associated with their counterclaim. There's no cross-appeal here. There's no basis for the court to afford the relief that was just requested. The court asked a question a moment ago about the Alvarez case, and under our reading of Alvarez, the court was dealing in that situation with a general statutory statute of limitations under, I believe, 13-205, a five-year general statute of limitations. Of course, general statutes of limitation are always subject to principles of equitable tolling and the discovery rule. But based on the specific facts in that case, the court held, and I think properly so, that the person was on notice. They wrote the check. Yes. I mean, it's part of that clear dichotomy in the cases. There are people who just have no notice, no facts, never had the right to check themselves, were never told that a payment was made on the one hand, and then we've got the people who wrote the checks, the road builders, the people who don't like paying impact fees but were aware of it from the outset and sat on the rights. I saw Mr. Enriquez's statement that the pamphlet or the flyer or the invitation to purchase clearly states that there will be an amusement tax. Is there something inaccurate in what he said, at least as far as what was contained in that, and then in the PSL itself that says that there may be a tax imposed but it will be paid by the bears? The inaccuracy is that none of the documents in this case, there's no evidence in this record to show that anyone ever disclosed to prospective purchasers that an amusement tax would be paid. Could, might, if, maybe, all those kind of, you know, mealy-mouthed weasel words in there, those don't give rise to the level that somebody would know that something's actually taking place. They are simply intended to, I suppose, cover the seller from those issues. One of the other points that was made was whether or not there was any, or one of the other questions, whether or not there was any evidence in the record that somebody just bought. Before we, I'm sorry to interrupt you, we'll come back to that, but what about the alternative argument with regard to tolling that the city makes, just made, that since there's no provision in the applicable statute for tolling that the discovery rule doesn't apply? I would respectfully suggest that that is fundamentally unfair and under principles of equity that this court can apply the equitable tolling argument, irrespective of whether the city chose to include that in the language it selected for its own statute. In essence, what we have here is a situation where it's fundamentally unfair. We're not going to tell anybody that we're going to tax, or that we did tax, and now we're going to come back after the fact and say, well, there's no equitable tolling language in that one year, and we waited until after the one year to tell you, and therefore you're out of luck. It's a heads-on, win-tails-you-lose argument. It simply conflicts with any sense of justice or equity in this case. With respect to the issue of the evidence that's in the record as to whether anybody purchased PSLs without the intention to go to the game, and it was a suggestion that that didn't happen, we would call the court's attention to our appendix at page 184. One of the named plaintiff class members is an individual who resided in California at the time he purchased the PSL. I think the fair inference from that, which the court must take, obviously, since we're up here on summary judgment issues, the fair inference from that is he wasn't flying back here 10 or 12 times a year to go to various games, and there's nothing in the record to suggest that that took place. There were a lot of people that were out of state. Either way, I think the privilege language can be interpreted the other way. Well, I think the privilege language is an interesting argument that the city makes because they just told you here that Mr. Bees is not at odds with the situation. In their brief, they told you that Mr. Bees was wrongly decided. They rely on the argument that a ticket is a license and that, therefore, it is not tangible property. But in Mr. Bees, they specifically argued that it was. Well, wait a minute. Mr. Bees were tickets, weren't they? They were not PSLs. That's correct. Okay, so there is a distinction there. I mean, isn't that what this whole thing is about, is that one is a ticket to get in, but the PSL isn't a ticket to get in? Right, but if you follow the logic that a ticket is tangible personal property, then the natural extension of that is that the PSL must, therefore, be tangible personal property. And all that triggers is the lack of a home rule authority and the fact that they have to comply within the strictures of the amusement tax statute as promulgated by the legislature. But you agree that if it's intangible, that's certainly not the same as if it were tangible. So if there is a difference, it makes a difference in this case. True? Well, I think the salient point coming out of that is that in Mr. Bees, the court's rationale was that because the ticket seller in that case is one step removed from the amusement, that therefore that creates a distinction. In this case, a PSL is at least one step removed from the amusement. Separate parties, separate transactions, separate contracts, different people, different rights, et cetera. We would also note that Judge Easterbrook, in the Seventh Circuit's opinion in the Subhub case, specifically noted the inconsistency between Mr. Bees and the positions that the city is now taking. And I would also point out that the city made the statement in its argument that it is the PSL in combination with the ticket that gives you the right to enter. And in reality, it's only the ticket that gives you the right to enter. The PSL confers a separate bundle of rights, separate and distinct from the right to enter. It's only the ticket that gets you in the door. Anything further? Based on this, we would request that the court reverse and remand the case and that a finding be made that both original PSL sales and subsequent transfers are not taxable subject to the amusement tax and remand for pursuit of the refund. I would like to thank the attorneys and say that the briefs and the arguments were excellent and the case was argued very professionally and it's an interesting case. And obviously, we are not going to decide it today. It will be taken under advisement. But we thank you all. I also thank all counsel. Thank you. We'll take a brief recess to switch panels for the next case.